**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GINA RUSSOMANNO, | : |
| | : |
| Plaintiff, | :    Civil Action No. 19-5945 (FLW) |
| v. | : |
| | :    **OPINION** |
| SUNOVION PHARMACEUTICALS and IQVIA | : |
| INC., | : |
| | : |
| Defendants. | : |
| | : |

**WOLFSON, Chief Judge**:

      Plaintiff Gina Russomanno ("Plaintiff"), proceeding *pro se*, brings this employment action against her former employer, Sunovion Pharmaceuticals Inc. ("Sunovion"), and IQVIA, Inc., ("IQVIA"), (cumulatively, "Defendants"). Pending before the Court are the following: (1) each Defendant's separate Motion to dismiss Plaintiff's Complaint, wherein Plaintiff alleges a claim for "wrongful termination, without real just cause, by Covenant of Good Faith (and fair dealing) Exception"; and (2) Plaintiff's Motion for Reconsideration of a prior Court Order that denied her request for remand. For the reasons expressed herein, Defendants' Motions to Dismiss are **GRANTED**, and Plaintiff's Motion for reconsideration is **DENIED**.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

      The following facts are drawn from the Complaint and are assumed to be true for the purpose of this Motion.[1] On August 15, 2016, Plaintiff received a formal written job offer from

---

[1]     I note that the Plaintiff attaches voluminous exhibits to the Complaint, including various signed agreements, that this Court can consider on a Motion to dismiss. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the

Sunovion for a position as a Therapeutic Specialist (the "Letter Offer"). Complaint ("Compl."), Ex. B. The Letter Offer, which Plaintiff signed and accepted on that same date, included information about compensation and training associated with the position of a Therapeutic Specialist. *Id*. In addition, the first page of the Letter Offer explained that Plaintiff would be hired on an at-will basis: "[p]lease note that neither this letter nor any other materials constitute a contract of employment with Sunovion; your employment with Sunovion will be on an at-will basis." *Id*.

On August 24, 2016, Plaintiff signed an "Invention, Non-Disclosure, Restricted Activity and Personal Conduct Agreement" (the "NDA"). The NDA contained a non-compete clause, and various terms and provisions that Plaintiff was required to adhere to during the course of her tenure at Sunovion. *Id*. Moreover, the NDA reiterated Plaintiff's at-will status under a section entitled "No Employment Contract": "I understand that this Agreement, alone or in conjunction with any other document agreement whether written or oral, does not constitute a contract of employment and does not imply that [my] employment will continue for any period of time." *Id*.

As a Therapeutic Specialist, Plaintiff conducted "customer engagement" telephone calls, and sold pharmaceutical products to consumers who resided in New Brunswick, New Jersey. *Id*., Ex. B. In performing these tasks, Plaintiff alleges that she was required to meet sales quotas each quarter, and Sunovion assessed her performance based on data that it received from IQVIA. *Id*. at I, 13. While she worked at Sunovion, Plaintiff alleges that she maintained "acceptable goal attainment percentages," ranging from "80%" to "over 85%." *Id*. at 2. Nevertheless, Plaintiff avers that her manager, Jenna Yackish ("Ms. Yackish"), placed her on a performance

---

allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

improvement plan ("PIP") for failing to reach 100% of her quotas for eight consecutive quarters.[2] *Id*. at 13.

The PIP was implemented with a timeline that spanned from October 24, 2018 to January 8, 2019. *Id*., Ex., B. However, the plan's first paragraph informed Plaintiff that, "[a]t any time either during or after the PIP's conclusion . . . management may make a decision about your continued employment, up to and including termination[.]" *Id*. Moreover, a similar warning was contained in the last section of the plan, under the heading "Consequences of Continued Non-Performance": "[f]ailure to comply with the expectations [herein] and to sustain this performance . . . may result in further disciplinary action, up to and including termination. All employment at Sunovion is at will. Employees are subject to discharge at any time with or without cause or notice." *Id*.

While the PIP was in effect, Ms. Yackish held progress "updates" with Plaintiff once a week. *Id.* at 17. During their meetings, Plaintiff alleges that Ms. Yackish made the following statements which are characterized as "oral agreements" in the Complaint: "[w]e don't want to let you go"; "[w]e want you to succeed"; "I want you to succeed"; "[d]o you want this. If you do then I want this for you"; "[t]his is going to be your quarter, I can feel it"; "I want this for you"; "[t]he PIP can be extended"; "[t]he PIP doesn't necessarily mean termination. It can always be extended if you still don't make goal." *Id*. Despite these encouraging remarks, however, according to Plaintiff, Ms. Yackish "shut[] [her] down" on "field rides" and "debat[ed] Plaintiff's action[s] toward success." *Id*. Thereafter, Plaintiff alleges that she was terminated

---

[2]     An Exhibit attached to the Complaint indicates that Plaintiff fell short of her sales goals, as she attained the following percentages during the first eight quarters of her tenure at Sunovion: 97.75%; 79.73%; 89.19%; 93.52%; 99.05%; 84.91%; 84.33%; 87.57%. *See* Compl., Ex. B.

from Sunovion on January 4, 2019, before "the documented PIP end date" on January 9, 2019. *Id*. at 5.

Prior to her termination, Plaintiff alleges that she raised a concern about the calculation of her sales quotas to Sunovion. *Id*. at 4, 16. In particular, according to Plaintiff, she informed Sunovion that her geographic market, *i.e.*, New Brunswick is a "long-standing, unchanged" region with a "conforming footprint," unlike other cities in the tri-state area which, for example, had "undergone multiple realignment shifts in footprint" that "affect the formula settings for sales history, market potential, and volumes[.]" *Id*. at 4. For reasons that are unclear from the Complaint, Plaintiff alleges that these geographical differences had an impact on her performance. *Id*. at 4, 16. However, Plaintiff states that Sunovion investigated these alleged matters, and concluded that the quota calculations for her geographic market were, in fact, accurate.

Separate and apart from Sunovion's own alleged miscalculations, Plaintiff alleges that it received inaccurate statistical data from IQVIA that impacted Sunovion's assessment of her job performance. *Id*. at II-IV. In particular, Plaintiff alleges that on January 4, 2019, Sunovion held a conference call with its "salesforce" to explain that IQVIA had furnished inaccurate data to Sunovion during the prior two years. *Id*. at II, 6. However, rather than discuss these alleged issues with her, Plaintiff alleges that Sunovion placed her on a PIP with the intention of terminating her, "to avoid . . . addressing how IQVIA['s] negligent reporting and other Sunovion miscalculations" impacted her performance in her assigned market of New Brunswick. *Id*. at III-IV, 3.

On January 11, 2019, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Monmouth County, asserting a claim for "wrongful termination, without real just

cause, by Covenant of Food Faith (and fair dealing) Exception," against Sunovion and IQVIA. On February 15, 2019, Defendants removed that case to this Court, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1441(a). On February 22, 2019, Plaintiff filed a motion to remand that this Court denied, finding that Defendants' removal of this action was proper. On October 3, 2019, Plaintiff moved for reconsideration of the Court's prior remand denial Order. On October 11, 2019, Defendants filed separate motions to dismiss Plaintiff's Complaint for the failure to state a viable cause of action. I first address Plaintiff's motion for reconsideration.

## II.    MOTION FOR RECONSIDERATION

In the prior Order, the Court denied Plaintiff's motion to remand for lack of diversity, finding that Defendants had satisfied their burden of establishing complete diversity, on the basis of sworn certifications that each submitted. Indeed, in those certifications, Defendants attested as follows: (1) Sunovion is incorporated in Delaware, with its principal place of business in Massachusetts; and (2) IQVIA, too, is a Delaware corporation that maintains "dual corporate headquarters" in Connecticut and North Carolina, and the "key business leaders" for the "business at issue" are employed in Pennsylvania. In moving for reconsideration, Plaintiff argues that the Court overlooked various documents which reveal that IQVIA maintains a principal place of business, or a "nerve center," in this State.

Fed. R. Civ. P. 59(e) and Local Civil Rule 7.1 govern motions for reconsideration. In particular, pursuant to Local Civil Rule 7.1(i), a litigant that is moving for reconsideration is required to "set[] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked[.]" L. Civ. R. 7.1(i). Moreover, motions for reconsideration are considered "extremely limited procedural vehicle[s]." *Resorts Int'l v. Greate Bay Hotel & Casino*, 830 F. Supp. 826, 831 (D.N.J. 1992); *see also Leja v. Schmidt Mfg.*, 743 F.

Supp. 2d 444, 456 (D.N.J. 2010). Indeed, requests seeking reconsideration "are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)); *see also N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

A "judgment may be altered or amended [only] if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone*, 664 F.3d at 415 (quotations omitted). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) (citations omitted). That is, "a motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998). Rather, a difference of opinion with the court's decision should be dealt with through the appellate process. *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1998).

In seeking reconsideration, Plaintiff disputes the Court's previous finding of complete diversity, and argues that IQVIA is a New Jersey citizen. As a threshold matter, however, I note that Plaintiff does not advance valid grounds for reconsideration, such as a change in law, new evidence, or manifest error. Instead, she relies upon the same documents that this Court

considered and rejected in the previous Order. Therefore, while Plaintiff's request can be denied on these grounds alone, *see Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (explaining that "[a] motion for reconsideration is improper when it is used to ask the Court to rethink what is had already thought through—rightly or wrongly") (internal quotations and citation omitted), the consideration of Plaintiff's new arguments would not otherwise change the outcome of this action. For Plaintiff's benefit, I will once again explain my rulings.

As explained in the previous Order, to establish jurisdiction under 28 U.S.C. § 1332(a), the amount in controversy must exceed $75,000, and there must be complete diversity of citizenship among the adverse parties. As to the latter requirement, each plaintiff must be a citizen of a different state from each defendant. *See Owen Equip. and Erection Co. v. Kroger*, 437 U.S. 365 (1978). Courts determine the citizenship of a corporation on the basis of the company's "place of incorporation" and its "principal place of business." *See* 28 U.S.C. §1332(c)(1). Moreover, a corporation's principal place of business is its "nerve center," or the location from which "a corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80, 93 (2010) (explaining that, "in practice [the nerve center] should normally be the place where the corporation maintains its headquarters . . . . "); *see also Brooks-McCollum v. State Farm Ins. Co.*, 376 Fed. Appx. 217, 219 (3d Cir. 2010).

Here, as in her previous remand motion, Plaintiff attaches "New Jersey Business Gateway" status reports for IQVIA and IQVIA Medical Communications and Consulting, Inc. ("IQMCC"), a non-defendant. In particular, the report for IQVIA shows that it is registered as a "Foreign Profit Corporation" in this State, with a "Home Jurisdiction" of Delaware. Moreover,

the IQVIA report lists two separate addresses, including an out-of-state "Main Business Address" in Connecticut, and a "Principal Business Address" in New Jersey. In addition, and unlike the documents for IQVIA, the IQMCC report specifies a "Domestic Profit Corporation" registration status, with a New Jersey "Home Jurisdiction" and "Main Business Address." Based on these records, Plaintiff again contends that IQVIA operates a principal place or business in New Jersey. In that connection, because she resides in this State, Plaintiff maintains that the Court erred in finding that the parties to this action are diverse. However, Plaintiff's position lacks merit.

At most, Plaintiff has shown that IQVIA maintains an office in this State in adherence to the regulations governing foreign corporate entities. *See* N.J.S.A. § 14A:4-1(1). However, as I explained in the previous Order, registering as a "Foreign Profit Corporation" to conduct business in this State does not suffice to establish New Jersey citizenship. *See e.g.*, *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 179 (D.N.J. 2016) (holding that "New Jersey's registration and service statutes do not constitute consent to general jurisdiction[.]"); *McClung v. 3M Co.*, No. 16-2301, 2018 U.S. Dist. LEXIS 220393, at *12 (D.N.J. July 5, 2018) (finding that the "mere registration of a business does not amount to consent to general jurisdiction in New Jersey."); *Boswell v. Cable Servs. Co.*, No. 16-4498, 2017 U.S. Dist. LEXIS 100708, at *14 (D.N.J. June 29, 2017) (concluding that the defendant's "registration to do business in New Jersey does not mean it consented to general jurisdiction in New Jersey."). Thus, to the extent that Plaintiff raises this position, these grounds fail to provide an appropriate basis for reconsideration.

Moreover, Plaintiff's reliance on the "Domestic Profit Corporation" registration status for IQMCC is misplaced. Indeed, because IQMCC is not named as a defendant in this action, its

state of incorporation is irrelevant for jurisdictional purposes. And, regardless of whether some kind of affiliation exists, in contrast to Plaintiff's position, the Court cannot find that IQVIA operates a principal place of business in this State, based on the mere presence of a related corporation such as IQMCC. *See Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 643 (3d Cir. 1991) ("[T]here is a presumption that a corporation, even when it is a wholly owned subsidiary of another, is a separate entity."). Rather, imputing IQMCC's principal place of business to IQVIA, as Plaintiff purports to do, requires her to demonstrate that the entities are alter egos. However, Plaintiff has not conducted the required fact intensive examination[3] to support such a finding, either in her initial remand motion or in the current reconsideration motion. Thus, IQMCC's presence in this State, too, fails to provide proper grounds for reconsideration.[4]

---

[3]    The Third Circuit has set forth several factors in determining whether entities are alter egos, including: "gross undercapitalization . . . 'failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.'" *Bd. of Trs. v. Foodtown, Inc.*, 296 F.3d 164, 172 (3d Cir. 2002) (citation omitted). Rather than address each of these elements, Plaintiff emphasizes that IQVIA and IQMCC share a corporate executive named Eric Sherbert. However, as I explained in the previous Order, an overlapping board of directors, with nothing more, does not suffice to establish a corporate alter ego. *See United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("It is a well-established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership."); *see also Leo v. Kerr-McGee*, No. 93-1107, 1996 U.S. Dist. LEXIS 6698, at *6 (D.N.J. May 10, 1996) ("A significant degree of overlap between directors and officers of a parent and its subsidiary does not establish an alter ego relationship.").

[4]    As explained in greater detail below, even if IQVIA operates a principal place of business in this State, Plaintiff's failure to assert connections between IQVIA and her wrongful termination, particularly since there are a dearth of factual allegations as to IQVIA, support the fact that Plaintiff has fraudulently joined IQVIA in this action. *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) ("The doctrine of fraudulent joinder is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal [diversity] jurisdiction.")*; see, e.g., Sussman v. Capital One, N.A.*, 14-01945, 2014 U.S. Dist.

Accordingly, the Court's findings in the prior remand Order remain unchanged. I proceed to address whether Plaintiff has alleged a cognizable wrongful termination claim against Sunovion and IQVIA.

## III.   MOTION TO DISMISS

### A.   Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint can be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a dismissal motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). Under this standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts

---

LEXIS 151866, at *19 (D.N.J. Oct. 24, 2014) (finding fraudulent joinder where there were "simply no allegations" in the plaintiff's complaint to substantiate a claim against a named defendant). In that connection, IQVIA's citizenship could be disregarded for diversity purposes.

to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (quotations and citations omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citation, quotations, and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. (citations and quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. (citations, quotations and brackets omitted); *Robinson v. Family Dollar, Inc.*, 679 Fed. Appx. 126, 132 (3d Cir. 2017).

**B.    SUNOVION**

### i. *Wrongful Termination*

In the Complaint, Plaintiff asserts a claim for "wrongful termination, without real just cause, by Covenant of Good Faith (and fair dealing) Exception."[5] *See* Compl. In support, Plaintiff avers that "[t]he covenant of good faith means that the employer and employee have to

---

[5]    In her opposition brief, Plaintiff confirms that her wrongful termination claim is pled in contract, not tort. Plaintiff's Opp., at 1 ("Plaintiff entered original complaint for wrongful termination by Covenant of Good Faith (and Fair Dealing) Exception as per New Jersey state law."). In addition, on the "Civil Case Information Statement" that accompanies her Complaint, Plaintiff identifies this action as arising under common law, as opposed to the "Conscientious Employees Protection Act" or Law Against Discrimination LAD." *See* Notice of Removal, Exhibit A.

be fair and forthright with each other, and employers must have 'just cause' to fire someone." Plaintiff's Opp., at 10. Despite these obligations, Plaintiff argues that Sunovion created "a new rule under new management" to "fabricate[]" a reason for her termination. *Id*. However, despite acknowledging that her "poor performance" and "missed" sales quotas were based on inaccurate data from IQVIA, Sunovion, Plaintiff contends, did not recalculate her performance measures, and instead, terminated her without "legitimate just cause." *Id*. at 10, 14-16.

At the outset, I cannot discern whether Plaintiff has alleged two separate causes of action in the Complaint. Indeed, Plaintiff appears to assert a wrongful termination claim, because, according to her, she was discharged from Sunovion without just cause. In addition, as a separate and independent basis, Plaintiff seems to allege that Sunovion breached the covenant of good faith and fair dealing by fabricating a basis for her termination. Nevertheless, even if the Court, out of an abundance of caution, construed Plaintiff's Complaint to plead two different causes of action, both claims fail for the same reason—she has not alleged the existence of an express or implied contractual obligation that Sunovion violated.

Under New Jersey law, it is axiomatic that "employment is presumed to be 'at will' unless an employment contract states otherwise." *Varrallo v. Hammond, Inc.*, 94 F.3d 842, 845 (3d Cir. 1996) (citing *Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 396 (1994)); *see Witkowski*, 136 N.J. at 397 ("An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise."); *McCrone v. Acme Mkts.*, 561 Fed. Appx. 169, 172 (3d Cir. 2014) ("While exceptions to this doctrine do exist, [t]oday, both employers and employees commonly and reasonably expect employment to be at-will, unless specifically stated in explicit, contractual terms.") (quotations and citation omitted).[6]

---

[6]     For purposes of completeness, I note that there are certain legislative and judicial exceptions to the at-will rule, neither of which Plaintiff has alleged here. For example, an

In an at-will relationship, a worker can be terminated "for good reason, bad reason, or no reason at all." *Witkowski*, 136 N.J. at 397 (citing *English v. College of Medicine & Dentistry*, 73 N.J. 20, 23 (1977)); *see Velantzas v. Colgate-Palmolive Co.*, 109 N.J. 189, 191 (1988) ("An employer can fire an at-will employee for no specific reason or simply because an employee is bothering the boss.").

In the absence of an express agreement, a plaintiff can assert a wrongful termination claim on the basis of an implied contract. For instance, in *Woolley v. Hoffmann-La Roche*, 99 N.J. 284, 285 (1985), the NJ Supreme Court held that barring "a clear and prominent disclaimer," a handbook or manual can create an "implied promise" to refrain from terminating an employee unless just cause exists. *Id.* at 285-86. The Court explained that an actionable breach can arise from an at-will termination when an employer hires an employee without an "individual employment contract," and "widely distribute[s,] among a large workforce," a handbook that includes "definite and comprehensive" provisions regarding "job security." *Id.* at 294, 302; *see Witkowski*, 136 N.J. at 396. Such provisions, the Court held, include those which list specific examples of "terminable offenses," or designate "a set of detailed procedures" to implement before an employee is discharged. *See Woolley*, 99 N.J. at 308; *see Witkowski*, 136 N.J. at 394.

In addition to corporate-wide policies, a verbal promise or representation to an individual employee can serve as grounds for an implied contract. For example, in *Shebar v. Sanyo Bus. Sys. Corp.*, 111 N.J. 276 (1988), the plaintiff was hired on an at-will basis. *Id.* However, after the

---

employer cannot discharge "a worker for a discriminatory reason." *Witkowski*, 136 N.J. at 398 (citing N.J.S.A. 10:5-1 to -28). In addition, "an employer may not fire an employee if the 'discharge is contrary to a clear mandate of public policy[.]'" *Id.* (quoting *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 73 (1980)); *see also Pierce*, 84 N.J. at 73 ("[E]mployers will know that unless they act contrary to public policy, they may discharge employees at will for any reason.").

plaintiff attempted to resign and accepted another job offer, his supervisor promised to refrain from firing the plaintiff without cause, if the plaintiff continued to work for his current organization. *Id*. at 280. Despite agreeing, the plaintiff was discharged about four months later, following which he filed a wrongful termination suit on the basis of a verbal contract. *Id*. at 283. In considering the plaintiff's claims, the Court recognized the "enforceability of an oral contract of employment," and held that a cause of action arising therefrom "should be analyzed by those contractual principles that apply when the claim is one that an oral employment contract exists." *Id*. at 288 (citing *Shiddell v. Electro Rust-Proofing Corp.*, 34 N.J. Super. 278, 290 (App. Div.1954)).

Here, the factual allegations in the Complaint fail to establish that an employment contract exists between Plaintiff and her employer. Indeed, a review of the exhibits to the Complaint reveals that Plaintiff, in two separate agreements, acknowledged her at-will status in explicit terms. First, on August 15, 2016, before she began her tenure as a Therapeutic Specialist, Plaintiff executed a Letter Offer from Sunovion that included the following language on the first page: "[p]lease note that neither this letter nor any other materials constitute a contract of employment with Sunovion; your employment with Sunovion will be on an at will basis." Compl., Ex. B. Less than two weeks later, on August 24, 2016, Plaintiff acknowledged her at-will status for a second time in a binding NDA. In fact, under a section entitled "No Employment Contract," the NDA contained an explicit disclaimer which provided: "I understand that this Agreement, alone or in conjunction with any other document or agreement whether written or oral, does not constitute a contract of employment and does not imply that my employment will continue for any period of time." *Id*. Thus, Plaintiff has not alleged the existence of an express agreement that would require cause for her termination.

In addition, Plaintiff has not pled that an implied agreement existed that would have altered her at-will status at Sunovion. Although the New Jersey Supreme Court has recognized that an implied contract can arise from a handbook or a verbal promise, neither are alleged in the Complaint. For instance, Plaintiff does not assert that Sunovion circulated a handbook throughout its workforce that included, for example, a list of "terminable offenses," or designated "a set of detailed [disciplinary] procedures" that could be construed to require just cause before she was discharged. Rather, Plaintiff claims that she was placed on a PIP and that Sunovion "terminated Plaintiff earlier than the documented PIP end date." Compl., 5. However, the allegations of such a program, as a result of Plaintiff's "performance concerns," do not amount to an agreement that modified her at-will status. Indeed, the PIP, attached to the Complaint, reiterates in its first and last paragraphs Plaintiff's at-will status, and warned that she could be terminated while the plan was in effect: "[at] any time either during or after the PIP's conclusion . . . employment is at will or management may make a decision about your continued employment, up to and including termination from the company." Compl., Ex. B. As such, Plaintiff has not pled factual allegations to conclude that she was fired in breach of an implied contract.

Moreover, the alleged "oral agreements" in the Complaint do not suffice to create an implied contract. In particular, the pleadings assert that Ms. Yackish made the following remarks during Plaintiff's tenure at Sunovion: "[w]e don't want to let you go"; "[w]e want you to succeed"; "I want you to succeed"; "[d]o you want this. If you do then I want this for you"; "[t]his is going to be your quarter, I can feel it"; "I want this for you"; "[t]he PIP can be extended"; "[t]he PIP doesn't necessarily mean termination. It can always be extended if you still don't make goal." *Id*. However, these alleged statements differ from those at issue in *Shebar*,

wherein the at-will plaintiff rejected a job offer, because his supervisor assured him that he would not be fired without just cause, if he continued his employment. In contrast, the alleged "oral agreements" that Plaintiff has referenced in her Complaint, here, present nothing more than encouraging remarks that do not suffice to create an enforceable oral contract between Plaintiff and Sunovion. *See e.g., Bell v. KA Indus. Servs., LLC*, 567 F. Supp. 2d 701, 710 (D.N.J. 2008) (dismissing a *Shebar* claim where the plaintiff did not allege "facts that if proven true, would support a conclusion that the implied contract was supported by consideration.").

However, even if Plaintiff alleged the existence of an implied agreement, the fact that Plaintiff has acknowledged, on multiple occasions, that she was an at-will employee dooms her implied contract claims. For example, the Third Circuit's decision in *Radwan. v. Beecham Laboratories, Div. of Beecham, Inc.*, 850 F.2d 147 (3d. Cir. 1998) illustrates this point. In that case, the plaintiff alleged that certain provisions in his handbook created an implied promise that was breached, when he was discharged without just cause. *Id.* at 148. However, the Third Circuit rejected the plaintiff's claims, finding that his "employment application" included an express provision that set forth his at-will status, stating: "I understand and agree that my employment is for no definite period and may, regardless of the date of payment of my wages and salary, be terminated at any time without previous notice." *Id.* at 148-149. Indeed, because the plaintiff accepted "a term of employment providing without qualification that he could be terminated at any time without previous notice," the Third Circuit explained that "he could hardly have any reasonable expectation that [his] manual granted him the right only to be discharged for cause." *Id.* at 150.

Like the employee in *Radwan*, Plaintiff, here, acknowledged her at-will status in two separate agreements, including the Letter Offer and the NDA. Thus, because Plaintiff's "tenure

was specifically dealt with in writing when [she] was hired," she could not reasonably believe that, for example, a handbook or a similar resource modified her at-will status. *Id.*; *see, e.g.*, *Schlichtig v. Inacom Corp.*, 271 F. Supp. 2d 597, 606 (D.N.J. 2003) (rejecting a breach of an implied contract claim, where the plaintiff, prior to the commencement of his employment, signed a contract stating that he "could be 'terminated with or without cause or notice at any time.'"); *McDermott v. Chilton Co.*, 938 F. Supp. 240, 245 (D.N.J. 1995) (finding the plaintiff's breach of an implied contract claim failed, because the plaintiff signed an "application form" when he started working that read "I specifically agree that my employment may be terminated, with or without cause or notice, at any time at the option of either the Company or myself."); *D'Alessandro v. Variable Annuity Life Ins. Co.*, 89-2052, 1990 U.S. Dist. LEXIS 16092, at *4, 10 (D.N.J. Nov. 20, 1990) (holding that a "standard practice memoranda" that the defendants distributed throughout the workforce did not create an enforceable agreement, because the plaintiff executed a contract that stated that it could "be terminated by either party for any reason").

In sum, Plaintiff has not sufficiently alleged that her job at Sunovion was anything other than an at-will employment.[7] Nor has she pled that Sunovion discharged her in breach of an express of verbal implied contract. Therefore, because the Complaint describes northing more than an at-will relationship, Plaintiff's wrongful termination claim arising from Sunovion's

---

[7]     Plaintiff's opposition attaches an unsigned Severance Agreement that she received from Sunovion. The terms of the Agreement contain a general release provision that encompasses claims arising under "the implied obligation of good faith and fair dealing; or any express, implied, oral, or written contract." Pl.'s Opp., at 2. Moreover, according to Plaintiff, the general release provision in the Severance Agreement demonstrates Sunovion's "admitted acknowledgment relating to a contract and contract obligations for plaintiff['s] employment." Pl.'s Opp., at 3. However, Plaintiff's position is without merit. Indeed, the general release provision in the Severance Agreement does not establish that an employment contract existed between her and Sunovion, particularly since, as explained *supra*, Plaintiff executed two separate agreements, including the Letter Offer and NDA, which set forth her at-will status in explicit terms.

alleged failure to establish cause is dismissed. *See, e.g., Day v. Wells Fargo & Co.*, No. 17-6237, 2018 U.S. Dist. LEXIS 66807, at *14 (D.N.J. April 20, 2018) ("In short, the Court concludes that a plaintiff cannot plead an action under the common law of New Jersey for wrongful discharge in breach of an implied term of an employment contract in the absence of an employment contract."). I next address Plaintiff's allegations as to the alleged breach of the covenant of good faith and fair dealing.

### ii. The Covenant of good faith and fair dealing.

In New Jersey, contracting parties are "bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (2005). While the concept of good faith is difficult to define in precise terms, "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party[.]" *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 245 (2001). To allege such a claim, a plaintiff must assert: "(1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract . . . ; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm." *Wade v. Kessler Inst.*, 343 N.J. Super. 338, 347 (App. Div. 2001).

As such, a claim based on a "[b]reach of the implied covenant of good faith and fair dealing is not a free-standing cause of action; such a covenant is an implied covenant *of a contract*." *Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 532 (D.N.J. 2017) (emphasis in original); *Wade v. Kessler Inst.*, 172 N.J. 327, 345 (2002) ("To the extent plaintiff contends

that a breach of the implied covenant may arise absent an express or implied contract, that contention finds no support in our case law. In that respect, we agree with the court below that an implied contract must be found before the jury could find that the implied covenant of good faith and fair dealing had been breached."); *Noye v. Hoffmann-La Roche Inc.*, 238 N.J. Super. 430, 433 (App. Div. 1990) ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing.") (citing *McQuitty v. General Dynamics Corp.*, 204 N.J. Super. 514, 519-20 (App.Div.1985)); *see also Varrallo v. Hammond Inc.*, 94 F.3d 842, 848 (3d Cir. 1996).

Here, because Plaintiff has not alleged the existence of an express or implied contract, she cannot assert a wrongful termination claim based on Sunovion's purported breach of the implied covenant; indeed, a breach of the implied covenant cannot occur in the absence of a contractual agreement. *See Schlichtig v. Inacom Corp.*, 271 F. Supp. 2d 597, 606 (D.N.J. 2003) ("[B]ecause the Court has concluded that the terms of this employee manual could not have given rise to an implied contract of employment, it necessarily follows that the manual's provisions do not contain an implied covenant of good faith and fair dealing."); *Barone v. Leukemia Society of America*, 42 F. Supp. 2d 452, 457 (D.N.J. 1998) ("In the absence of a contract, there is no implied covenant of good faith and fair dealing which might be used as a basis for finding a right to continued employment."); *McDermott*, 938 F. Supp. at ("Under New Jersey law, an implied covenant of good faith and fair dealing may not be invoked to restrict the authority of employers to fire at-will employees."); *Argush v. LPL Fin. LLC*, No. 13-7821, 2014 U.S. Dist. LEXIS 107148, at *10 (D.N.J. Aug. 5, 2014) ("[I]t is well settled that the implied term of fair dealing will not work to constrain an employer's discretion to terminate an at-will employee.") (quotations and citations omitted); *Alessandro*, 1990 U.S. Dist. LEXIS 16092, at

*14 ("New Jersey courts have uniformly 'rejected the proposition that there is an implied covenant of good faith and fair dealing between an employer and employee in an at-will situation.'").

### C.   IQVIA

IQVIA challenges the pleadings under Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet the pleading requirements of Rule 8(a)(2) in multiple defendant actions, such as the one here, "the complaint must clearly specify the claims with which each individual defendant is charged." *Kounelis v. Sherrer*, No. 04-4714, 2005 U.S. Dist. LEXIS 20070, at *11 (D.N.J. Sept. 6, 2005); *see Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 604 (D.N.J. 2010) ("Because the Complaint involves multiple claims and multiple defendants, the Court must carefully determine whether the Complaint provides each defendant with the requisite notice required by Rule 8 for each claim, and whether the claim itself presents a plausible basis for relief."); *Pushkin v. Nussbaum*, No. 12-0324, 2014 U.S. Dist. LEXIS 52349, at *14 (D.N.J. April 15, 2014) ("Rule 8(a) . . . 'requires that a complaint against multiple defendants indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants.'") (quoting *Poling v. K. Hovnanian Enterprises*, 99 F. Supp. 2d 502, 517-18 (D.N.J. 2000)).

Here, the factual allegations in the Complaint do not assert a viable claim against IQVIA. For instance, the first paragraph of the pleadings state that the instant action arises not from the alleged conduct of IQVIA—a corporation that Plaintiff does not work for—but from Sunovion's purported "wrongful termination, without real just cause by Covenant of Good Faith (and fair dealing) Exception . . . ." Compl., pg. 1-2. In addition, throughout the Complaint, Plaintiff

alleges Sunovion's failure to establish "just cause" for her discharge, and the bad-faith conduct that Sunovion exhibited towards Plaintiff, in breach of the implied convent of good faith and fair dealing. Indeed, time and time again, the pleadings state that Plaintiff was harmed as a result of Sunovion's alleged conduct, with no mention of a specific, actionable wrongdoing that IQVIA performed. In fact, Plaintiff pleads no factual allegations that IQVIA should be held liable for her alleged wrongful termination. Rather, as to IQVIA, the Complaint alleges that IQVIA supplied certain data to Sunovion, which Sunovion then used to assess the performance of its workers. *Id*. at I. However, Plaintiff cannot assert a wrongful termination claim against IQVIA on the basis of its business relationship with Sunovion.[8] Therefore, IQVIA is dismissed as a defendant to this action.

Nonetheless, I note that the pleadings include passing references to IQVIA's alleged "negligent reporting." *Id*. at II-IV. Assuming that Plaintiff is asserting a claim for negligence against IQVIA, that cause of action cannot stand. To assert such a claim, a litigant must allege four elements: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages[.]" *Brunson v. Affinity Federal Credit Union*, 199 N.J. 381, 400 (2009) (quotations and citations omitted). Here, because no relationship whatsoever is pled between Plaintiff and IQVIA, she has not alleged the first element of a negligence claim. *See NCP Litig. Trust v. KPMG LLP*, 187 N.J. 353, 901 (2006) ("Ultimately, the duty owed to another is defined by the relationship between the parties."); *see also Willekes v. Serengeti Trading Co.*, No. 13-7498, 2016 U.S. Dist. LEXIS 129404, *49-50 (D.N.J. Sept. 21, 2016) ("In determining the

---

[8]      I note that, even if Plaintiff asserts that IQVIA is liable for her alleged wrongful termination, her claim still fails. Indeed, it is axiomatic that an at-will employee's wrongful termination claim lies against his or her employer. *See Velantzas v. Colgate-Palmolive Co.*, 109 N.J. 189, 191-192 (1988) ("[A] terminated at-will employee has a cause of action against the employer for wrongful termination . . . . ") (citing *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980)).

existence of a duty of care . . . [t]he relationship between the parties is itself a critical factor.");
*Magnum LTL, Inc. v. CIT Group/Bus. Credit, Inc.*, No. 08-5345, 2009 U.S. Dist. LEXIS 32340, at *4 (D.N.J. Apr. 16, 2009) ("Based on the Complaint, no relationship between [the plaintiff] and [the defendant] exists. Lacking such a relationship, [the plaintiff] cannot establish a duty of care, a breach of that duty, or any other of the . . . necessary elements for a negligence claim."). Thus, to the extent such a claim has been plead, Plaintiff's negligence cause of action is dismissed.

Moreover, in contrast to Plaintiff's contentions, IQVIA is not a "necessary party." Compl., pg. 2. Rule 19(a), which governs the joinder of indispensible persons, provides that parties are required to be joined in an action when: "(A) in that person's absence, the court cannot accord complete relief among existing parties . . . ." Fed. R. Civ. P. 19(a). "Under Rule 19(a)(1), the Court must consider whether—in the absence of an un-joined party—complete relief can be granted to the persons already parties to the lawsuit." *Huber v. Taylor*, 532 F.3d 237, 248 (3d Cir. 2008). Here, Plaintiff claims that she was terminated without "legitimate just cause," as a result of Sunovion's alleged conduct—no other harms are identified in the Complaint. Moreover, the pleadings do not assert that IQVIA is somehow responsible for Plaintiff's alleged wrongful termination from Sunovion; Plaintiff has not asserted that she works for IQVIA, or that IQVIA was involved in the decision making process that lead to Plaintiff's termination from Sunovion. Therefore, based on the pleadings, the relief which Plaintiff seeks for the alleged wrongdoing in the Complaint can only be obtained from Sunovion, her employer.

Having determined that Plaintiff has not alleged a plausible claim against IQVIA, and that Sunovion is the only appropriate defendant in this action, IQVIA is dismissed from this lawsuit.

## IV.     CONCLUSION

For the reasons set forth above, Defendants' Motions to dismiss are **GRANTED**, and Plaintiff's Motion for reconsideration is **DENIED**. Plaintiff's claims are dismissed with prejudice.


**DATED**:  May 18, 2020

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge
